[No. A094853. First Dist., Div. Four. Dec. 27, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVE ENG, Defendant and Appellant.

## COUNSEL

Law Offices of Paul Delano Wolf, Paul Delano Wolf, Erik G. Babcock and Marcie Neff for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan, Jill M. Thayer and Ryan B. McCarroll, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**REARDON, Acting P. J.**—Appellant Steve Eng appeals his judgment of conviction following a no contest plea to possession for sale of heroin (Health & Saf. Code, § 11351) (count 1) and possession for sale of methamphetamine (Health & Saf. Code, § 11378) (count 2), with admitted allegations of two prior felony convictions for possession of dangerous drugs (Pen. Code, § 667.5, subd. (b); Health & Saf. Code, § 11377, subd. (a)). The trial court sentenced appellant to the lower two-year term for count 1 and a concurrent middle two-year term for count 2, and stayed sentence on the enhancements. Appellant challenges his conviction on grounds that the trial court should have granted his motion to dismiss pursuant to Penal Code section 995 because the warrantless search of his boat was unconstitutional. We affirm the judgment.

## I. FACTS

On August 29, 2000, the United States Coast Guard received a distress call in the early evening hours regarding a person needing medical assistance on board a disabled vessel outside the San Leandro channel. A Coast Guard crew located the vessel adrift outside the channel. It was a small sailboat. The radio did not work and the boat had no power.

Appellant was on board with another man located below deck who apparently was about to have a seizure. Coast Guard officers transferred the ailing man to the Coast Guard vessel and brought him to the marina, where an ambulance was waiting. Rather than wasting valuable time towing the sailboat during that trip, two experienced crew members stayed with appellant and anchored his boat.

After ensuring that the victim was safely ashore, the Coast Guard officers returned to assist appellant with his boat. They towed the boat to the marina and moored it to the pier. Petty Officers Ashmore and Jacob Carlson and Firefighter Aaron Caro then conducted a postsearch-and-rescue (SAR) boarding to ensure that the boat was in compliance with federal rules and regulations.

Serving as the mechanic of the boarding team, Firefighter Caro reviewed particular items to "see if [the boat] has watertight integrity, make sure

there's not oil everywhere . . . ." The crew searched the engine room compartment, and checked for safety features such as fire extinguishers and life jackets.

Firefighter Caro also checked the marine sanitation device (head) to make sure it complied with regulations. He noticed that the head was pumping sanitation overboard, a violation. As Firefighter Caro was pointing this out to appellant, he noticed a small baggie on the floor containing a brown substance wet on the outside and hard in the middle. It appeared to be brown tar heroin. When asked what it was, appellant claimed he did not know.

Firefighter Caro summoned Petty Officer Carlson. On his way, Carlson stepped through a cutout hatch. Pulling his foot back, Petty Officer Carlson removed a piece of wood and spotted an open black camera case containing a scale, syringe, spoon, pipe, knife, straw, and vial. The officers removed appellant from the vessel and conducted a search for more contraband, locating more syringes, foil, and propane tanks.

## II. Discussion

Ruling on appellant's initial motion to suppress evidence, the trial court found the Coast Guard officers credible and concluded the search "was a legitimate and appropriate safety inspection following an intervention of a search-and-rescue nature, that it was fully constitutional." Appellant is adamant that the below-deck search of his boat was unconstitutional and therefore the fruits of the search should have been suppressed.

The Coast Guard's authority to search vessels is found at title 14 United States Code section 89(a): "The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon . . . waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance."

This statute gives the Coast Guard plenary authority to stop vessels for document and safety inspections, but like any federal regulation, it is subject to constitutional limitations, including those imposed by the Fourth Amendment. (*United States v. Watson* (9th Cir. 1982) 678 F.2d 765, 771.) The Fourth Amendment impresses a reasonableness standard which calls

for balancing the competing individual and governmental interests. In deciding whether a particular law enforcement practice is permissible, we balance the objective and subjective intrusion on the defendant's Fourth Amendment interests against the promotion of legitimate governmental interests, evaluated in light of alternative mechanisms available. (*United States v. Watson, supra,* 678 F.2d at p. 771; see also *United States v. Villamonte-Marquez* (1983) 462 U.S. 579, 588 [103 S.Ct. 2573, 2579-2580, 77 L.Ed.2d 22].)

 Moreover, the original statutory grant of authority in title 14 United States Code section 89(a) can be traced to an enactment of the First Congress, which also proposed the Fourth Amendment. That original enactment "is persuasive evidence that stops and searches of the sort involved here [document and safety inspection on high seas after dark pursuant to administrative plan] without a warrant and without even a founded suspicion are not 'unreasonable' as that word is used in the Fourth Amendment." (*United States v. Watson, supra,* 678 F.2d at p. 774.)

Appellant insists that there was "no justification" for the "extensive" below-deck search. We disagree.

Here, the government has a strong, legitimate public safety interest in detecting violations of safety regulations and securing compliance therewith. This interest was heightened in the present case because the Coast Guard had just towed the vessel to safety after finding it disabled and adrift in the San Francisco Bay. The radio was not working and there were no lights, although it was after dark. The purpose of the search was underscored by the fact that the officers discovered that the "head" was illegally pumping sewage overboard because it was not properly secured.

The intrusion was minimal since appellant himself had summoned help and received requested assistance in handling his passenger's medical emergency and the boat's incapacity. The post-SAR search was conducted pursuant to standard procedure, not pursuant to an individual officer's discretion.

Nor can appellant complain that the search occurred after dark, since he took the initiative to enlist the Coast Guard's help after dark. Thus, the Coast Guard's approach did not engender fear; rather, it brought relief.

Appellant urges that the below-deck search requires justification separate from the initial boarding. We disagree. Again, the intrusion was minimal and the governmental interest great. Inspection of the marine sanitation device was part of the standard practice and its purpose—preventing sewage from

being dumped into the bay—served public health and safety. The officers had already previously been below deck to remove appellant's passenger. The cabin was open and very small, only four steps across. Once the officials entered the space to assist the ailing passenger, appellant's reasonable expectation of privacy in the small cabin was minimal and intrusion to inspect the marine sanitation device of no consequence.

Appellant argues nonetheless that the warrantless below-deck search cannot be justified as an administrative search because appellant was not engaged in a "closely regulated industry," the search took place after the boat was docked, and the search was "apparently unlimited in 'time, place and scope.' " These arguments have no merit.

First, appellant is wrong—maritime activity is closely regulated. (*United States v. Villamonte-Marquez, supra,* 462 U.S. at pp. 590-591 [103 S.Ct. at pp. 2580-2581]; *United States v. Watson, supra,* 678 F.2d at p. 772.) Coast Guard boardings are an effective means for policing compliance with safety and documentation regulations and as a practical matter there are no feasible, less intrusive alternatives. (*United States v. Watson, supra,* 678 F.2d at p. 772.)

Second, the Coast Guard towed the boat to the marina for the safety of appellant and everyone else. It was just a matter of common sense.

Finally, the search was not unlimited. It was not a random endeavor, prompted by the discretion of a Coast Guard officer. Rather, it was conducted pursuant to the force's practice of conducting post-SAR boardings, which by definition are limited to vessels that have been the subject of an SAR effort. The practice is eminently reasonable in light of the particular need to ensure that vessels already known to have encountered difficulty on United States waters are in compliance with safety regulations. Under these circumstances the time and place of the search is determined by the vessel, not the Coast Guard.

Appellant also emphasizes that the boat was a pleasure boat. The high court rejected this distinction in *United States v. Villamonte-Marquez, supra,* 462 U.S. at page 592, footnote 6 [103 S.Ct. at page 2581]: "Respondents assert that they were in a 'pleasure boat,' yet they proved to be involved in a highly lucrative commercial trade." So, too, appellant was stowing drugs for sale on his "pleasure" boat.

The below-deck inspection was part of an administrative search, the administrative search served a legitimate government interest and was not random, and the intrusion on appellant was minimal.

The judgment is affirmed.

Sepulveda, J., and Kay, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 10, 2002. George, C. J., did not participate therein.